# Case No. 573a.

ASHBAHS et al. v. The TRUSTY.

[Betts' Scr. Bk. 554.]

District Court, S. D. New York. May 18, 1857.

### SALVAGE—DERELICT—DISTRIBUTION.

[A vessel, totally abandoned and partly stripped, was manned and worked into port when the position of such vessel, the state of the weather, and season of the year were all unfavorable to saving her. *Held*, that the salvors should be allowed one moiety of the proceeds of the wreck, after payment of taxable costs, which is the largest allowance ordinarily made for salvage in case of derelict.]

[In admiralty. Libel by John Ashbahs and others against the sloop Trusty and cargo for salvage. Decree for libellants. Motion by libellants for an order of distribution. Granted.]

Mr. Sandford, for libellants.
Mr. Jenness, for claimant.

BETTS, District Judge. This is a motion for an order of distribution of the proceeds of salved property among the respective salvors. No party appeared to contest the suit for salvage, and a decree was therefore rendered by default. The salvors demand the allotment of the entire property to them as compensation for bringing it in. This is against the general principles of salvage rewards, which contemplates a division of the property saved between its owner and those who have preserved it and restored it to him. It may, however, happen that the expense of rescuing and restoring the property equals its entire value, or so nearly so that the surplus is an inadequate reward to the salvors for their risk and labor. In that case, it is competent to the court to devote the whole property to the satisfaction of the charges incurred in rescuing it. The misfortune of the owner, however, is never to be lost sight of, in the anxiety to do full justice to the merits of the salvors.

The owners of the Trusty and her cargo bought her in at an auction sale under the decree of condemnation in this cause, at the sum of $1,800, and the net proceeds deposited in court were $1,468.80. The schooner, William A. Spofford, which was employed in making the salvage, was worth at the time $8,000, and her cargo $12,000. Her owner expended in making the salvage and keeping the wreck after it was brought in $115.75. She was manned by a crew of nine men and a master, bound from Florida to New York, with a full cargo of cedar wood on board. She fell in with the Trusty Dec. 28, 1856, some three hundred miles from New York, totally abandoned and partly stripped. The weather was rough and the sea bad. The wreck was manned and worked into New York, arriving on Jan. 1, 1857. The position of the wreck, the state of the weather and the season of the year were all unfavorable to saving her, but she was worked in by judicious exertions without any special hazard other than supplying some equipments from the salving vessel and two men to navigate the wreck, and being exposed to extra labor on both vessels.

I think the largest allowance ordinarily made for salvage in case of derelict is the proper sum to be awarded in this instance. I shall decree that the libellants recover one moiety of the net proceeds of the wreck, after payment of the taxable costs. I accept the plan of distribution among the salvors proposed by the libellants, and direct the sum in court, after deducting the costs of suit, to be divided into fourteen equal parts, one half of which is to be paid to the owner of the Spofford, three parts to the mate who took charge of the wreck, and two parts to the seamen who went on board with him, and aided in navigating her into New York, one part to the master of the Spofford, and a moiety of one part to each of the remainder of the crew.